*In re* McLOUTH'S ESTATE.

UNITED STATES v. SHAW.

1. ACTION—JURISDICTION—LIMITATION OF ACTIONS—STATUTES.
   If a statute creating a new right of action contains within itself limitation of jurisdiction over subject matter or express limitation of time within which the new right of action must be presented, failure of compliance with such limitation defeats the right of action.

2. EXECUTORS AND ADMINISTRATORS—COMMISSIONERS ON CLAIMS—
SET-OFF—STATUTE OF LIMITATIONS—JURISDICTION OF PROBATE
COURT.

Statutory provision authorizing presentation of claims by ex-
ecutor or administrator in offset to claims of creditors before
commissioners on claims but barring commissioners from allow-
ing any claim for or against the estate which has been out-
lawed by the statute of limitations did not constitute a juris-
dictional provision as to the probate court since the operation
of the statute would have been the same without such directory
provision (3 Comp. Laws 1929, §§ 13976, 15682).

3. SAME—JURISDICTION OF PROBATE COURT—UNITED STATES—SET-
OFF—STATUTE OF LIMITATIONS.

Probate court had jurisdiction to allow an affirmative judgment
against United States, as creditor, on claim against United
States in an amount greater than latter's claim against the
estate notwithstanding estate's claim has been outlawed by
the statute of limitations and statute authorizing executor or
administrator to present claims for the estate to offset those
against the estate barred commissioners on claims from allow-
ing a claim for or against the estate, which had been outlawed
by the statute of limitations, as the government could claim
the benefit of the statute of limitations, if at all, only in the
same sense that it might in an ordinary lawsuit (3 Comp.
Laws 1929, §§ 13976, 15682).

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—STATUTE OF LIMITA-
TIONS.

Defense of statute of limitations which had not been raised by
the United States to claim estate sought to set off against
claim by government while proceeding was pending before the
probate court nor assigned as a reason in support of appeal
to the circuit court may not be injected for first time on appeal
to the Supreme Court (3 Comp. Laws 1929, § 13976).

5. COURTS—PROBATE—CIRCUIT—APPEAL.

When litigation instituted in the probate court is taken by appeal
or certification to the circuit court, the latter court exercises
appellate jurisdiction only and is restricted to the issues
presented by reasons assigned in support of the appeal (3 Comp.
Laws 1929, § 15958).

6. United States—Government in Position of Private Litigant—
   Set-Offs.

> When United States comes into court to assert a claim, it so far
> takes the position of a private suitor as to agree by implica-
> tion that justice may be done with regard to subject matter;
> and absence of legal liability in a case where, but for its
> sovereignty, it would be liable, does not destroy justice of
> claim against it.

7. Same—Affirmative Judgment Against Government—Waiver of
   Sovereign Immunity.

> United States, by voluntarily submitting its claim against an
> estate to the courts of this State for adjudication, assumed
> a status as a litigant no different than that of a private in-
> dividual and in the exercise of jurisdiction so acquired sovereign
> immunity is disregarded so as to permit the entry of an affirma-
> tive judgment against the government on estate's claim in a
> larger amount (3 Comp. Laws 1929, § 15682).

8. Same—State Court—Jurisdiction—Execution.

> That a State court may be powerless to enforce its judgment
> against the United States by execution does not affect the
> court's jurisdiction as a final arbiter of the rights of the
> parties in a controversy between the estate of a deceased per-
> son and the government which had been initiated by the
> latter.

9. Constitutional Law—Due Process—Affirmative Judgment
   Against United States—Set Off in Probate Court.

> By determination in earlier proceeding between administrator of
> an estate and the United States which, as successor to the
> assets and liabilities of the United States Shipping Board
> Emergency Fleet Corporation which was wholly owned by the
> Federal government, had presented a claim against the estate,
> was liable to estate for amount of larger claim which adminis-
> trator presented against the government, the United States
> was afforded its day in a court with power to hear and de-
> termine unliquidated claims, hence there was full compliance
> with due process requirements of both State and Federal
> Constitutions in the entry of an affirmative judgment against
> the United States (U. S. Const. Am. 14, § 1; Mich. Const.
> 1908, art. 2, § 16).

Appeal from St. Clair; George (Fred W.), J. Submitted June 8, 1939. (Docket No. 38, Calendar No. 40,443.) Decided September 5, 1939. Reversed by the Supreme Court of the United States, March 25, 1940. *United States* v. *Shaw,* 309 U. S. 495 (60 Sup. Ct. 659).

In the matter of the estate of Sidney C. McLouth, deceased. On petition of John C. Shaw, administrator *de bonis non,* for allowance of balance due estate on set-off against claim of United States of America. From allowance of petition, the United States of America appealed to circuit court. Order of probate court affirmed. United States of America appeals. Affirmed.

*John C. Lehr,* United States Attorney, *Peter P. Gilbert,* Assistant United States Attorney, *O. P. M. Brown,* Special Assistant United States Attorney (*Carl F. Farbach,* General Counsel, United States Maritime Commission, of counsel), for United States of America.

*Stewart & Black* (*Howell Van Auken,* of counsel), for administrator *de bonis non.*

NORTH, J. Except as hereinafter noted the factual background of this case will be found in *Re McLouth's Estate,* 281 Mich. 191, hereinafter referred to as a former appeal in this litigation. From the facts there stated it appears a claim against the McLouth estate in favor of the Ingram-Day Lumber Company was finally reduced to judgment in the supreme court of the United States. *Ingram-Day Lumber Co.* v. *McLouth,* 275 U. S. 471 (48 Sup. Ct. 153). The date of this judgment was January 3, 1928. Pending this litigation in the Federal court McLouth had died in 1923. With accrued interest and costs the adjudicated claim was ultimately allowed in the probate court of St. Clair county against the McLouth estate in the sum of $58,089.04. For

reasons noted in our former decision and because of an act of Congress (Merchant Marine Act, 49 Stat. at L. 1987 [46 USCA, § 1113], quoted in margin hereof) * appellee herein asserts that the United States government as an assignee or successor to all the rights and liabilities of the United States Shipping Board Emergency Fleet Corporation (herein designated as the Fleet Corporation) is obliged to reimburse or indemnify the McLouth estate as to its liability on this $58,089.04 claim. At the outset we may note, as held on the former appeal, we are of the opinion that appellee's contention in this particular is sound.

Another claim against the McLouth estate in the amount of $40,165.48 in favor of the United States government was reduced to judgment in the Federal courts. *Shaw* v. *United States* (C. C. A.), 75 Fed. (2d) 175. This adjudicated liability was also filed as a claim in the St. Clair probate court proceedings in the McLouth estate. Later the administrator of the estate succeeded in establishing his contention of right to satisfy this latter liability of the estate by having it set off or allowed *pro tanto* against the government's liability to reimburse the estate for the Ingram-Day Lumber Company claim of $58,089.04. This was the controversy decided in *Re McLouth Estate, supra.*

---

* "The United States Shipping Board Merchant Fleet Corporation shall cease to exist and shall stand dissolved. All the records, books, papers, and corporate property of said dissolved corporation shall be taken over by the commission. All existing contractual obligations of the dissolved corporation shall be assumed by the United States. Any suit against the dissolved corporation pending in any court of the United States shall be defended by the commission (created by this act) upon behalf of the United States, under the supervision of the attorney general, and any judgment obtained against the dissolved corporation in any such pending suit shall be reported to Congress in the manner provided in 31 USCA, § 226, for reporting judgments against the United States in the court of claims." Section 203 (a) of the Merchant Marine Act, 1936 (49 Stat. at L. 1987 [46 USCA, § 1113]).

After our former decision the administrator, on November 20, 1937, petitioned the probate judge, acting in the place of commissioners on claims, for the ascertainment and allowance of the excess of the Ingram-Day Lumber Company claim over and above the government's claim as a claim in favor of the McLouth estate and against the United States government. The uncontroverted difference in amount between those claims, allowance being made for accrued interest, is $23,628.97. By reason of the above-noted judgments, as embodied in this record, the amount of the damage to the estate was fixed or liquidated in case of failure of performance of the indemnity settlement agreement (outlined in our former decision) which failure is shown to have occurred. From the probate court's order granting the administrator's petition and allowing this claim in the amount of $23,628.97 as of December 8, 1937, in favor of the estate, the government appealed to the circuit court. On hearing in the circuit court the allowance of the claim was affirmed; although this result instead of being reached after a full hearing on the merits was reached because of a seeming abandonment of the proceedings in the circuit court by the government's representatives. From the judgment entered in the circuit court the government has brought the instant appeal. As stated in appellant's brief:

"But a new question is presented on this appeal, namely, whether the probate judge, acting as commissioner of claims, possessed jurisdiction to allow an affirmative judgment against this appellant — a question that was not presented on the former appeal [*i. e.*, the appeal in *Re McLouth Estate, supra*].

"Appellant's challenge to the jurisdiction of the probate judge rests not alone upon the immunity of the sovereign, but also rests upon the contention that

the same statute that created the right to apply a set-off in favor of the estate and provided the remedy, also imposed a condition which affected the existence of the right and prohibited the special tribunal in which the right might be asserted from giving any consideration to a set-off which was invalidated by the condition imposed, *i. e.*, if the set-off was barred by the Michigan statute of limitations (3 Comp. Laws 1929, § 13976 [Stat. Ann. § 27.605]). This last contention might have been but was not raised on the former appeal.''

At the oral argument appellant definitely took the position that the only questions presented by this appeal are:

1. Did the probate court have jurisdiction to allow the claim of $23,628.97 in favor of the estate and against the government?

2. As to this claim, has there been due process of law so that the government is bound by the adjudication?

It is appellant's contention that each of these questions should be answered in the negative.

In presenting its contention that the probate court was without jurisdiction to allow the claim of $23,628.97 against the government, appellant in its brief has framed the issue as follows:

''Since decedent's claim against the Emergency Fleet Corporation for breach of contract accrued to decedent or to decedent's estate more than six years prior to the date decedent's administrator exhibited said claim in offset to the claim of appellant against the estate and hence was barred by [the statute of] limitations (3 Comp. Laws 1929, § 13976), did the probate judge, acting either as commissioners of claims or as a probate court, possess jurisdiction to allow the claim exhibited in favor of the estate, as a set-off or otherwise, in view of the prohibition in

3 Comp. Laws 1929, § 15682, against allowance of any claim barred by the statute of limitations?''

We quote the statute under which the probate court asserted its jurisdictional right to adjudicate the issue.

''When a creditor against whom the deceased had claims shall present a claim to the commissioners, the executor or administrator shall exhibit the claims of the deceased in offset to the claims of the creditor, and the commissioners shall ascertain and allow the balance against or in favor of the estate, as they shall find the same to be; *but no claim barred by the statute of limitations shall be allowed by the commissioners in favor of or against the estate, as set-off or otherwise.*'' 3 Comp. Laws 1929, § 15682 (Stat. Ann. § 27.2829).

JURISDICTION. The issue as to jurisdiction is presented by the italicized portion of the above-quoted statute. Appellant contends that (1) since its obligation to pay the Ingram-Day Lumber Company claim had outlawed, the probate court, acting solely under authority of the statute just quoted, was without jurisdiction to render judgment in favor of the estate; and (2) that the question of jurisdiction may be raised at any time pending final adjudication. As to the first of the above contentions, appellant cites *Davis* v. *Mills,* 194 U. S. 451 (24 Sup. Ct. 692); *U. S., ex rel. Texas Portland Cement Co.,* v. *McCord,* 233 U. S. 157 (34 Sup. Ct. 550), and numerous other cases. The proposition is this:

If a statute creating a new right of action contains within itself limitation of jurisdiction over subject matter or express limitation of time within which the new right of action must be presented, failure of compliance with such limitation defeats the right of action.

It is true that the quoted statute vests commissioners on claims with power to adjudicate set-offs,

which power would not exist except for the statutory provision; but subjecting and limiting the exercise of this power by mere reference to our general statute of limitations, which is commonly applicable to all courts, did not add to or constitute in the statute a jurisdictional element. This provision only specifies that commissioners on claims in deciding set-off issues, like our courts, are governed by the provisions of our general statute of limitations. Without this directory provision the operation of the statute would have been the same. A like provision is not contained in the statutory provisions for general hearing of claims by commissioners, but nonetheless a claim barred by the statute cannot be allowed by commissioners. A special or distinct limitation of time for asserting a set-off before commissioners is not embodied in this statute; such, for example, as the express limitation of two years for bringing a statutory action under the blue sky law. See *Bigelow* v. *Otis,* 267 Mich. 409.

"A positive distinction seems to be made between cases in which the limitation of time for bringing suit is contained in the statute which creates the liability and right of action and general statutes of limitations of rights of action existing under other statutes or under the common law." *Bement* v. *Railway Co.,* 194 Mich. 64, 68 (L. R. A. 1917 E, 322).

We think it follows that appellant can claim in this proceeding the benefit of the statute of limitations, if at all, only in the same sense it might in an ordinary law suit.

DEFENSE OF THE STATUTE OF LIMITATIONS. Except as incident to its challenge to the jurisdiction of the probate court, we do not understand that appellant in this appeal relies upon the statute of limitations as a defense to the estate's claim. Nor could it do so. Such a claim was not made in the probate court so far as disclosed by this record and it was not as-

signed as a reason in support of the appeal to the circuit court. It cannot now be injected as an issue on appeal to this court. The proceedings now before us originated in the probate court, having been instituted in that tribunal by appellant. When litigation instituted in the probate court is taken by appeal or certification to the circuit court, the latter court exercises appellate jurisdiction only and is restricted to the issues presented by reasons assigned in support of the appeal. 3 Comp. Laws 1929, § 15958 (Stat. Ann. § 27.3158). *In re Beers,* 148 Mich. 300; *In re Ward's Estate,* 152 Mich. 218; *In re DeHaan's Estate,* 169 Mich. 146; *In re Broffee's Estate,* 206 Mich. 107; *In re Murray's Estate,* 219 Mich. 70; *In re Reid's Estate,* 248 Mich. 360. If there was any objection to the estate's counterclaim growing out of the statute of limitations it should have been raised before the commissioners or on the appeal to the circuit court. *Shurbun* v. *Hooper,* 40 Mich. 503; *Andrews* v. *Osborn,* 159 Mich. 77.

It follows that the question of the effect of the statute of limitations, if any, on the controversy brought to us by this appeal is not open to consideration.

JURISDICTION TO RENDER AFFIRMATIVE JUDGMENT— SOVEREIGN IMMUNITY. As a second challenge to the jurisdiction of the probate court and the circuit court, appellant asserts:

"The probate judge did not possess jurisdiction to enter an affirmative money judgment against this appellant."

This contention is based upon the assertion of the government's sovereign immunity from suits in State and Federal courts. We quote from appellant's brief:

"The United States cannot be sued in any court, Federal or State, without express authority of Con-

gress, and when it consents to be sued the act is jurisdictional and must be strictly followed (*United States* v. *Pfitsch,* 256 U. S. 547 [41 Sup. Ct. 569]). Its immunity recognizes no distinction between cross bills and original bills, or between ancillary suits and original suits, but extends to suits of every class (*Illinois Central R. Co.* v. *Public Utilities Commission of Illinois,* 245 U. S. 493 [38 Sup. Ct. 170]). There is no difference between recoupment, counterclaim, and set-off so far as invoking jurisdiction is concerned (*Merchants Heat & Light Co.* v. *James B. Clow & Sons,* 204 U. S. 286 [27 Sup. Ct. 285])."

There is some seeming conflict in Federal decisions as to jurisdiction of State or Federal courts to render affirmative judgments against the government in suits wherein the government has voluntarily appeared.    Appellant cites *Illinois Central R. Co.* v. *Public Utilities Commission of Illinois,* 245 U. S. 493 (38 Sup. Ct. 170), and quotes the following:

"No doubt there are situations in which a cross bill against an ordinary suitor may be considered and dealt with in virtue of the jurisdiction over the principal suit, even though as an original bill it could not be entertained (see *City and County of Denver* v. *New York Trust Co.,* 229 U. S. 123, 135 [33 Sup. Ct. 657], and cases cited); but it is otherwise where the cross bill is against the United States, for no suit against it can be brought without its consent given by law.   Its immunity recognizes no distinction between cross bills and original bills, or between ancillary suits and original suits, but extends to suits of every class.   [Citing numerous cases.]"

But the applicability of the above quotation to the instant suit is seriously impaired, if not wholly nullified, by the fact that the United States was not originally a party to the *Illinois Central Railroad Company Case;* but instead an unsuccessful attempt was made to interplead the United States.   The instant

case is decidedly different in that the government has voluntarily brought its claim into the State courts. A like distinguishing feature exists in the recent Federal case cited in appellant's reply brief. *Minnesota* v. *United States,* 305 U. S. 382 (59 Sup. Ct. 292). In this suit the government was made a party defendant. It was not a voluntary party; but instead it appeared specially in the Federal court and moved to dismiss on the ground that it had not consented to be sued. Its motion was granted.

In others of the cases cited by appellant, affirmative judgment against the government based on set-off or counterclaim was denied because of controlling statutory provisions which restricted the jurisdiction of the forum in which suit was brought. See *United States* v. *Nipissing Mines Co.,* 124 C. C. A. 313 (206 Fed. 431). We forego specifically pointing out the quite obvious inapplicability of numerous Federal decisions cited by appellant because of our understanding that the more recent Federal decisions hold adversely to appellant's contention that State or Federal courts do not have jurisdiction to render affirmative judgments against the United States, even in cases to which the government has voluntarily made itself a party. In the instant controversy the government as the moving party voluntarily appeared in the probate court and asserted a claim for upwards of $40,000 against the McLouth estate. It is now faced with a counterclaim in the same proceedings. On the former appeal Mr. Justice Butzel, speaking for the Court, said:

"The tendency of the United States supreme court is to allow a set-off against the government when the latter brings suit." *In re McLouth's Estate, supra.*

The following from *American Propeller & Manfg. Co.* v. *United States,* 300 U. S. 475 (57 Sup. Ct. 521) was quoted in our decision of the former appeal:

"We have said (*United States* v. *The Thekla,* 266 U. S. 328, 339–341 [45 Sup. Ct. 112]): 'When the United States comes into court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter. The absence of legal liability in a case where but for its sovereignty it would be liable does not destroy the justice of the claim against it. * * * The reasons are strong for not obstructing the application of natural justice against the government by technical formulas when justice can be done without endangering any public interest.' If the principle thus stated is not strictly applicable, it at least suggests that the court should not affirm what is clearly an unjust and inequitable result unless under plain compulsion of law."

Also in deciding the former appeal we cited and quoted from *United States* v. *National City Bank of New York* (C. C. A.), 83 Fed. (2d) 236 (106 A. L. R. 1235). Following this decision by the circuit court of appeals, the Federal supreme court denied certiorari (see 299 U. S. 563 [57 Sup. Ct. 25]). The decision is so controlling in the instant appeal that we again quote from it herein:

"The next question is whether sovereign immunity from suit bars this set-off. Set-offs against the sovereign United States have been allowed where it was plaintiff. *United States* v. *Wilkins,* 6 Wheat. (19 U. S.) 135; *United States* v. *MacDaniel,* 7 Pet. (32 U. S.) 1; *United States* v. *Kimball,* 101 U. S. 726; *United States* v. *Ringgold,* 8 Pet. (33 U. S.) 150. The supreme court has held, independently of any statute, that, where the sovereign brings a suit, it submits to the application of the same principles which govern private suitors. *The Paquete Habana,* 189 U. S. 453 (23 Sup. Ct. 593); *The Nuestra Senora de Regla,* 108 U. S. 92 (2 Sup. Ct. 287); *The Siren,* 7 Wall. (74 U. S.) 152. In *The Siren, supra,* the principle of a sovereign plaintiff's submission to

jurisdiction was held subject to the qualification that no affirmative judgment could be entered, but in *The Nuestra Senora Case, supra,* an affirmative judgment against a sovereign was upheld, and the previous qualification of the right against the government was removed. This was followed in 1902 in *The Paquete Habana, supra,* and later reaffirmed in *United States* v. *The Thekla,* 266 U. S. 328 (45 Sup. Ct. 112).

"If a sovereign State goes into court seeking its assistance, it is in accord with the best principles of modern law that it should be obliged to submit to the jurisdiction in respect to a set-off or counterclaim properly assertable as a defense in a similar suit between private litigants. *The Gloria,* 286 Fed. 188. See *French Republic* v. *Inland Navigation Co.,* 263 Fed. 410, 411. Where a sovereign voluntarily litigates, he must play the role of a litigant like any other suitor and abide by the consequences. See *Richardson* v. *Fajardo Sugar Co.,* 241 U. S. 44 (36 Sup. Ct. 476); *People of Porto Rico* v. *Ramos,* 232 U. S. 627 (34 Sup. Ct. 461); *Clark* v. *Barnard,* 108 U. S. 436, 447, 448 (2 Sup. Ct. 878). It is now established that, where a sovereign comes into court, he is unarmed with immunity as against the rights of a defendant who has a proper set-off to his claim."

In its still more recent decision the supreme court of the United States has said:

"By voluntarily appearing in the role of suitor it (a foreign sovereign) abandons its immunity from suit and subjects itself to the procedure and rules of decision governing the forum which it has sought. Even the domestic sovereign by joining in suit accepts whatever liabilities the court may decide to be a reasonable incident of that act. *United States* v. *The Thekla,* 266 U. S. 328, 340, 341 (45 Sup. Ct. 112); *United States* v. *Stinson,* 197 U. S. 200, 205 (25 Sup. Ct. 426); *The Davis,* 10 Wall. (77 U. S.) 15; *The*

*Siren,* 7 Wall. (74 U. S.) 152, 159.'' *Guaranty Trust Co.* v. *United States,* 304 U. S. 126, 134 (58 Sup. Ct. 785).

The extent to which the Federal supreme court by its recent decisions has indicated a proneness to minimize or restrict sovereign immunity from suit is strikingly disclosed by its very recent decision in *Keifer & Keifer* v. *Reconstruction Finance Corp.,* 306 U. S. 381 (59 Sup. Ct. 516).

In the light of the above-cited decisions, appellant's contention that the probate court did not possess jurisdiction to enter an affirmative judgment against it is not tenable. We are not in accord with appellant's contention that the law as announced in the above-cited cases should be confined in its application to proceedings in admiralty. Neither the context of the decisions nor the reasoning therein employed justifies appellant's contention. It may be noted that neither the *American Propeller Company Case,* nor the *National City Bank Case,* nor the *Guaranty Trust Company Case,* from each of which we have just above quoted, involves an admiralty controversy.

''There is no difference between a libel *in rem,* under which a ship is arrested, and an action *in personam* against an agent of the sovereign.'' *Kunglig Jarnvagsstyrelsen* v. *Dexter & Carpenter, Inc.,* 300 Fed. 891.

On the question of jurisdiction we conclude that since the United States of its own volition submitted its claim against the McLouth estate to the courts of his State, its status as a litigant here is no different than that of an individual who has submitted to the jurisdiction of our State courts. In the exercise of jurisdiction thus acquired sovereign immunity is properly disregarded; and as to the asserted coun-

terclaim the court had full power to make final determination of the rights of the litigants including power to render affirmative judgment against the Federal government. That the State court may be powerless to enforce its judgment against the United States by execution is beside the question as to the court's jurisdiction as a final arbiter of the parties' rights. *United States* v. *Eckford,* 6 Wall. (73 U. S.) 484. Appellee's position as to this phase of the case is stated in its brief as follows:

"Appellee does not claim that this judicial determination by the probate court constitutes a judgment against the Fleet Corporation within the meaning of the last sentence of 49 Stat. 1987, § 203 (46 USCA, § 1113). The probate court's order is a judicial ascertainment that, on striking a balance of proper demands, the United States as claimant is indebted to the estate (a result and determination which is permitted and dictated by the *Eckford Case* [6 Wall. (73 U. S.) 484], as well as by our probate court set-off statute), and the adjudicated obligation must consequently be paid, if at all, by special congressional act."

Was there lack of due process? Appellant further contends that the judgment for $23,628.97 entered in the probate court and affirmed on appeal to the circuit court of St. Clair county violated the due process clauses of the State and Federal Constitutions. The basis of this contention is that this affirmative judgment in favor of the McLouth estate arises out of the contractual obligation of the Fleet Corporation, not out of any commitment of the United States; and appellant asserts there has never been an adjudication in any forum fixing the liability of the Fleet Corporation or the United States for this contractual undertaking of the corporation or for the breach thereof. But this contention is not

tenable. In the earlier proceedings between these parties which went to final adjudication on the former appeal to this Court, it was determined that the government had placed itself in the shoes of the Fleet Corporation. Throughout the transactions giving rise to this litigation the government has been the principal and the Fleet Corporation merely its self-created agency. It now appears that by voluntary congressional action (Merchant Marine Act, 49 Stat. at L. 1987 [46 USCA, § 1113]) the United States dissolved the Fleet Corporation, took over all of its assets, and assumed its liabilities. That appellant is liable for the undertakings of the Fleet Corporation embodied in its indemnifying contract with McLouth was adjudicated on the former appeal. This determination was essential to decision of that appeal. By reason of our former decision such is now the law of this case. It is in the proceedings had in the courts of this State, to which the government became a voluntary party, that the government has had its day in court. The adjudication adverse to the government was in a proceeding provided by the statute in this State (3 Comp. Laws 1929, § 15682 [Stat. Ann. § 27.2829]). The adjudicating tribunal had power to hear and determine unliquidated claims. *Willard* v. *Fralick,* 31 Mich. 431; *Ford* v. *Maney's Estate,* 251 Mich. 461 (70 A. L. R. 1315); *In re Oldman's Estate,* 264 Mich. 32. Hence there was full compliance with the due process requirements of both the State and Federal Constitutions.*

Decision herein is only as to the right of appellee to an affirmative judgment fixing the amount of the excess of the estate's claim against the United States over and above its judgment for $40,165.48 against the McLouth estate. The right to set off *pro tanto*

* See U. S. Const. Am. 14, § 1; Mich. Const. 1908, art. 2, § 16.—RE-PORTER.

to the extent of the government's judgment was finally adjudicated in the former appeal decided in 281 Mich. 191. Other questions discussed in the briefs are not decisive of the instant appeal nor essential to decision, and their consideration herein is not deemed necessary. The judgment entered in the circuit court is affirmed and the case remanded for certification to the probate court. Costs to appellee.

BUTZEL, C. J. and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.