## UNITED STATES *v.* SHAW, ADMINISTRATOR DE BONIS NON.

No. 570.  Argued February 27, 1940.—Decided March 25, 1940.

---

[17] *Ocean Beach Heights, Inc.* v. *Brown-Crummer Investment Co.,* 302 U. S. 614.  Cf. *Normandy Beach Dev. Co.* v. *United States,* 69 F. 2d 105.

496

*Solicitor General Biddle,* with whom *Assistant Attorney General Shea* and *Messrs. Melvin H. Siegel, Paul A. Sweeney,* and *Thomas E. Harris* were on the brief, for the United States.

*Messrs. Eugene F. Black* and *Shirley Stewart,* with whom *Mr. Howell Van Auken* was on the brief, for respondent.

MR. JUSTICE REED delivered the opinion of the Court.

In 1918 Sydney C. McLouth contracted to construct nine tugs for the United States Shipping Board Emergency Fleet Corporation. On May 24, 1920, the contract was cancelled and the parties entered into a settlement agreement providing that McLouth was to keep as bailee certain materials furnished him for use in building the tugs and that the Fleet Corporation was to assume certain of McLouth's subcontracts and commitments. Among the commitments assumed was a contract of Mc-

Louth's to purchase lumber from the Ingram-Day Lumber Company. The Lumber Company obtained a judgment against McLouth for $42,789.96 for breach of this contract,[1] and, McLouth having died in 1923, filed its claim on the judgment in the probate court of St. Clair County, Michigan. Subsequently the United States obtained a judgment of $40,165.48 against McLouth's administrator,[2] representing damages for the conversion of the materials left with McLouth as bailee, and claim on this judgment was filed in the probate court. The administrator, respondent here, having presented without success the Lumber Company's judgment to the General Accounting Office,[3] sought to set off that judgment against the judgment of the United States. The probate court allowed the claim of the United States and denied the set-off, but its ruling as to the set-off was reversed on appeal to the Michigan Supreme Court.[4] The administrator then petitioned the probate court to grant statutory judgment of the balance due the estate. The court found that the claim of the United States, with interest, amounted to $49,442.41 and the Lumber Company's claim to $73,071.38 and "ordered, adjudged and ascertained" that the United States was indebted to the estate for the difference, $23,628.97, "and that such indebtedness be and the same is hereby allowed as and determined to be a proper claim which is owing to said estate by the United States of America." The probate court's judgment was affirmed on appeal.[5]

---

[1] *Ingram-Day Co.* v. *McLouth*, 275 U. S. 471.

[2] *Shaw* v. *United States*, 75 F. 2d 175.

[3] The Act of March 3, 1797, 1 Stat. 512, 514, as amended, 28 U. S. C. § 774, provides that in "suits brought by the United States against individuals, no claim for a credit shall be admitted . . . except such as appear to have been presented to the General Accounting Office for its examination, and to have been by it disallowed. . . ."

[4] *In re McLouth's Estate*, 281 Mich. 191; 274 N. W. 759.

[5] 290 Mich. 311; 278 N. W. 477.

On this certiorari we are concerned with the question whether the United States by filing a claim against an estate in a state court subjects itself, in accordance with local statutory practice, to a binding, though not immediately enforceable, ascertainment and allowance by the state court of a cross-claim against itself.

Because of different views of other federal courts as to the decisions of this Court in the important federal field of cross-claims against the United States,[6] we granted certiorari.[7] *United States* v. *United States Fidelity & Guaranty Company* [8] involves this question.

The statute of Michigan under which this ascertainment of indebtedness was made, so far as pertinent, is set out in the footnote.[9] There is no contention on the part of respondent that the judgment is enforceable against the United States even in the limited sense of statutory direction to report the judgment to Congress as in the Court

---

[6] Cf. *United States* v. *Eckford*, 6 Wall. 484; *The Thekla*, 266 U. S. 328. *In re Patterson-MacDonald Shipbuilding Co.*, 293 F. 192 (C. C. A. 9), certiorari denied, *sub nom. McLean* v. *Australia*, 264 U. S. 582. *Roumania* v. *Guaranty Trust Co.*, 250 F. 341 (C. C. A. 2), certiorari denied, 246 U. S. 663; *United States* v. *Nipissing Mines Co.*, 206 F. 431, 434 (C. C. A. 2); *Adams* v. *United States*, 3 Ct. Cls. 312, 333; *Peterson* v. *United States*, 26 Ct. Cls. 93, 98. *United States* v. *National City Bank*, 83 F. 2d 236 (C. C. A. 2), certiorari denied, 299 U. S. 563; *American Propeller Co.* v. *United States*, 300 U. S. 475; *Guaranty Trust Co.* v. *United States*, 304 U. S. 126.

[7] 308 U. S. 548.

[8] *Post*, p. 506.

[9] Compiled Laws of Michigan (1929), c. 266, § 15682:

"Set-offs in settlement of claims. Sec. 9. When a creditor against whom the deceased had claims shall present a claim to the commissioners, the executor or administrator shall exhibit the claims of the deceased in offset to the claims of the creditor, and the commissioners shall ascertain and allow the balance against or in favor of the estate, as they shall find the same to be; but no claim barred by the statute of limitations shall be allowed by the commissioners in favor of. or against the estate, as a set-off or otherwise."

of Claims Act[10] or the Merchant Marine Act.[11] Execution against property of governmental agencies subjected to such procedure by statute is sometimes allowed.[12] The position taken is that the probate court judgment is a "final determination" of the rights of the litigants, howsoever such rights may later become important. We are not here concerned with the manner of collection. Such was the holding of the Supreme Court of Michigan.[13]

The state procedure for the determination of the balance against or in favor of an estate, which was employed here, was the recognized method of closing an estate at the time of the probate judgment. The probate judge was empowered to act as commissioner under the statute quoted above.[14] His decision unreviewed was considered final.[15] The determination of the probate court between private parties was enforceable without reëxamination in the circuit court.[16] Even the right to execution is not essential to a complete judicial process.[17] The order entered was a final determination of the amounts due the estate by the United States on this claim and cross-claim if the probate court had jurisdiction to render the order against the petitioner.

Whether that jurisdiction exists depends upon the effect of the voluntary submission to the Michigan court by the United States of its claim against the estate. As a foundation for the examination of that question we may lay the postulate that without specific statutory consent, no suit may be brought against the United

[10] 31 U. S. C. § 226.

[11] 46 U. S. C. § 1113.

[12] *Federal Housing Administration* v. *Burr, ante,* p. 242.

[13] 290 Mich. 311; 287 N. W. 477.

[14] 3 Comp. Laws Mich. (1929), § 15681.

[15] *Flynn* v. *Lorimer's Estate,* 141 Mich. 707; 105 N. W. 37.

[16] *Shurbun* v. *Hooper,* 40 Mich. 503.

[17] *Nashville, C. & St. L. Ry. Co.* v. *Wallace,* 288 U. S. 249, 263; *Flynn* v. *Lorimer's Estate,* 141 Mich. 707; 105 N. W. 37.

States.[18] No officer by his action can confer jurisdiction.[19] Even when suits are authorized they must be brought only in designated courts.[20] The reasons for this immunity are imbedded in our legal philosophy. They partake somewhat of dignity and decorum, somewhat of practical administration, somewhat of the political desirability of an impregnable legal citadel where government as distinct from its functionaries may operate undisturbed by the demands of litigants. A sense of justice has brought a progressive relaxation by legislative enactments of the rigor of the immunity rule. As representative governments attempt to ameliorate inequalities as necessities will permit, prerogatives of the government yield to the needs of the citizen. By the act of March 3, 1797, and its successor legislation, as interpreted by this Court, cross-claims are allowed to the amount of the government's claim, where the government voluntarily sues.[21] Specially designated claims against the United States may be sued upon in the Court of Claims or the district courts under the Tucker Act.[22] Special government activities, set apart as corporations or individual agencies, have been made suable freely. When authority is given, it is liberally construed.[23] As to these matters no controversy exists.

Respondent contends this immunity extends, however, only to original suits; that when a sovereign voluntarily seeks the aid of the courts for collection of its indebted-

[18] *Kansas* v. *United States,* 204 U. S. 331; *United States* v. *Thompson,* 98 U. S. 486, 489, 490; *Buchanan* v. *Alexander,* 4 How. 20.

[19] *Stanley* v. *Schwalby,* 162 U. S. 255, 270; *Carr* v. *United States,* 98 U. S. 433, 437.

[20] *Minnesota* v. *United States,* 305 U. S. 382, 388.

[21] 1 Stat. 512, 514; R. S. § 951; 28 U. S. C. § 774. *United States* v. *Wilkins,* 6 Wheat. 135, 144.

[22] 28 U. S. C. §§ 41 (20), 250.

[23] *Keifer & Keifer* v. *Reconstruction Finance Corp.,* 306 U. S. 381; *Federal Housing Administration* v. *Burr, supra.*

ness it takes the form of a private suitor and thereby subjects itself to the full jurisdiction of the court. The principle of a single adjudication is stressed, as is the necessity for a complete examination into the cross-claim, despite attendant dislocation of government business by the appearance of important officers at distant points and the production of documents as evidence, to justify the allowance of an offset to the government's claim.[24] It is pointed out that surprise is not involved as no cross-claim may be proven until after submission to and refusal by the government accounting officers.[25] Respondent further insists that his position is supported by *The Thekla*[26] and subsequent decisions quoting its language.[27] Emphasis is placed upon the fact that these probate proceedings are in rem or quasi in rem [28] as were the libels in admiralty in *The Thekla*.

It is not our right to extend the waiver of sovereign immunity more broadly than has been directed by the Congress. We, of course, intimate no opinion as to the desirability of further changes. That is immaterial. Against the background of complete immunity we find no Congressional action modifying the immunity rule in favor of cross-actions beyond the amount necessary as a set-off.

*The Thekla* turns upon a relationship characteristic of claims for collision in admiralty but entirely absent in claims and cross-claims in settlement of estates. The subject matter of a suit for damages in collision is not the vessel libelled but the collision. Libels and cross-libels for collision are one litigation and give rise to one

---

[24] *United States* v. *Wilkins, supra.*

[25] 28 U. S. C. § 774.

[26] 266 U. S. 328.

[27] See note 33, *infra.*

[28] *United States* v. *Bank of New York Co.,* 296 U. S. 463, 477; *Montgomery* v. *Wayne Circuit Judge,* 284 Mich. 430.

liability.[29]   In equal fault, the entire damage is divided. As a consequence when the United States libels the vessel of another for collision damages and a cross-libel is filed, it is necessary to determine the cross-libel as well as the original libel to reach a conclusion as to liability for the collision.   That conclusion must be stated in terms of responsibility for damages.   In *The Thekla* opinion the cases of *Illinois Central R. Co.* v. *Public Utilities Commission* [30] and *Nassau Smelting Works* v. *United States* [31] were cited in support of the statement that ". . . generally speaking a claim that would not constitute a cause of action against the sovereign cannot be asserted as a counterclaim."   This Court then said: "We do not qualify the foregoing decisions in any way."   In the *Smelting* case this Court had said, two weeks before, on a certificate as to the jurisdiction of the district court to consider a counterclaim:

"The objection to a suit against the United States is fundamental, whether it be in the form of an original action or a set-off or a counterclaim.   Jurisdiction in either case does not exist unless there is specific congressional authority for it.   Nor is there doubt that the question is one which involves the jurisdiction of the District Court as a federal court under the statutes of the United States, for the jurisdiction of the District Court in this regard is wholly dependent on such statutes." [32]

There is little indication in the facts or language of *The Thekla* to indicate an intention to permit generally unlimited cross-claims.   Quotations from *The Thekla* in later opinions of this Court are used to illustrate prob-

---

[29] *Bowker* v. *United States,* 186 U. S. 135, 139.

[30] 245 U. S. 493, 504, 505.

[31] 266 U. S. 101.

[32] *Id.,* 106.

504

lems entirely apart from the one under consideration here.[33]

The suggestion that the order of the probate court is in reality not a judgment but only a "judicial ascertainment" of credits does not affect our conclusion. No judgment against the United States is more than that. But such an entry, if within the competence of the court passing the order, would be res judicata of the issue of indebtedness.[34] The suggestion springs from the opinion in *United States* v. *Eckford.*[35] These words there appear:

"Without extending the argument, we adopt the views expressed by this court in the case of *De Groot* v. *United States,* (5 Wall. 432) decided at the last term, that when the United States is plaintiff and the defendant has pleaded a set-off, which the acts of Congress have authorized him to do, no judgment can be rendered against the government, although it may be judicially ascertained that, on striking a balance of just demands, the government is indebted to the defendant in an ascertained amount."

The Court had just written that no action could be sustained against the government without consent and that to permit a demand in set-off to become the foundation of a judgment would be the same thing as sustaining the prosecution of a suit.[36] The language quoted above means no more than that no judgment may be entered against the government even though the court has ascertained, through its processes, that the government is actually indebted to the defendants. The judgment should be limited to a dismissal of the government's claim.

In the *Eckford* case this Court was dealing with the litigation at a more advanced stage than the present liti-

---

[33] *American Propeller Co.* v. *United States,* 300 U. S. 475,. 478; *Guaranty Trust Co.* v. *United States,* 304 U. S. 126, 134.

[34] *Williams* v. *United States,* 289 U. S. 553, 564.

[35] 6 Wall. 484, 491.

[36] Cf. *Reeside* v. *Walker,* 11 How. 272, 290.

gation has reached. The United States had sued Eckford's executors on his bond in the District Court for the Southern District of New York. They pleaded a set-off, a balance was found in their favor and a judgment entered that the executors were entitled to be paid the amount found. Suit in the Court of Claims was instituted by the executors, the record was proven, over objection, and judgment entered accordingly.' Consequently a reversal of the Court of Claims was the only step necessary. This Court did not deal with the New York judgment.[37]

We have considered respondent's further argument that sovereign immunity was waived when the United States took possession of the assets of its agent the Fleet Corporation prior to the institution of this action, and later, but prior to the entry of the probate judgment appealed from, assumed the Corporation's obligations by the act of June 29, 1936.[38] We see nothing in these transactions which indicates an intention to waive the immunity of the United States in the state courts.

*Reversed.*

MR. JUSTICE McREYNOLDS took no part in the decision of this case.

---

[37] Cf. *Schaumburg* v. *United States,* 103 U. S. 667.

[38] 49 Stat. 1987:

"SEC. 203. The United States Shipping Board Merchant Fleet Corporation shall cease to exist and shall stand dissolved. All the records, books, papers, and corporate property of said dissolved corporation shall be taken over by the Commission. All existing contractual obligations of the dissolved corporation shall be assumed by the United States. Any suit against the dissolved corporation pending in any court of the United States shall be defended by the Commission upon behalf of the United States, under the supervision of the Attorney General, and any judgment obtained against the dissolved corporation in any such pending suit shall be reported to Congress in the manner provided in section 226, title 31, United States Code, for reporting judgments against the United States in the Court of Clair s."