UNITED STATES of America, Plaintiff,

v.

Frank SEIDEN, Milton Seiden and Leon Seiden, Defendants.

Civ. A. No. 13685.

United States District Court
E. D. New York.

Feb. 9, 1956.

650

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., Harry C. Fischer, Asst. U. S. Atty., Brooklyn, N. Y., of counsel, for plaintiff.

Nathan, Mannheimer, Asche & Winer, New York City, Norman Winer, New York City, of counsel, for defendants.

GALSTON, District Judge.

The motion made by the plaintiff, pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., is to dismiss the defendants' counterclaim on the ground that the court has no jurisdiction over the subject-matter thereof, and for summary judgment in that there is no genuine issue as to any material fact.

The complaint sets forth that on November 12, 1947 the plaintiff and the defendants contracted for the conveyance of certain realty in the County of Nassau, and that Paragraph 16 of the contract between the parties reads as follows:

"Covenant Against Contingent Fees: The successful bidder warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the government the right to annul the contract or at its option to recover from the successful bidder the amount of such commission herewith set forth. This warranty shall not apply to commissions payable by the successful bidder upon the contract secured or made through bona fide established commercial agencies maintained by the successful bidder for the purpose of doing business. 'Bona fide established commercial agencies' has been construed to include licensed real estate brokers engaged in the business generally."

It is then alleged that the defendants paid one James V. Hunt, or J. V. Hunt Company, Inc., the sum of $77,767.77 for the purpose of procuring the aforesaid contract, and that neither Hunt nor the Hunt Company was a bona fide established commercial agency, nor a licensed real estate broker. Accordingly the plaintiff seeks the aforesaid sum from the defendants.

The answer, after setting forth various denials and special defenses, alleges a counterclaim by way of recoupment, that a part only of defendants' property was returned by plaintiff to defendants in 1947, and that despite may demands by defendants for the remainder of the property, the remainder has been withheld from the defendants contrary to the provisions of the Surplus Property Act of 1944, as amended, 50 U.S.C.A. Appendix, § 1611 et seq., section 23, and that the defendants in consequence suffered damage which exceeds the sum demanded by the plaintiff.

The plaintiff filed a reply in which it alleges that the counterclaim fails to state a claim on which relief can be granted, and also that the right to damages, if any, was previously litigated in the case of Seiden v. Larson, 88 U.S. App.D.C. 258, 188 F.2d 661, in the District of Columbia, and is res judicata as to the defendants' counterclaim herein.

The plaintiffs, in support of their motion, submit a certified copy of the complaint filed by the defendants herein as plaintiffs in the action brought by them

in the District of Columbia, from which it appears that prior to April, 1945, the Seidens were the owners of 169.5 acres in Nassau County; that in September 1942, by order of the District Court for the Eastern District of New York, pursuant to the powers vested in the Secretary of the Navy in Title 2, section 201, of the Second War Powers Act of 1942, U.S.C.A. Title 50, Appendix, § 632, the Secretary took possession of the property, and in 1945, upon payment of the consideration fixed by the said court, caused title to be taken in the name of United States of America. In May, 1947, the Secretary of the Navy, pursuant to the provisions of section 11 of the Surplus Property Act of 1944, declared the aforesaid property to be surplus. It is then alleged in that District of Columbia case, by the Seidens, that the War Assets Administration, of which the defendant Larson was then Administrator, became the disposal agency in behalf of the United States for said property, and that on or about July 1, 1949 the General Services Administration succeeded the War Assets Administration as the disposal agency for said property. Larson was the Administrator of the General Services Administration, and Mather was the Liquidator thereof. The Seidens then alleged that section 23 of the Surplus Property Act of 1944, as amended, provides that real property acquired by the United States for the purposes of prosecuting the War shall be disposed of, and that in such disposition priority shall be given first to any agency of the United States Government desiring to purchase the property, and then in the event that the Government did not exercise such priority, to any State Government or subdivision thereof; and in the event that neither of these two priorities be exercised, then to the prior owner at a price fixed in subdivision (d) (3) of the said section.

The Seiden complaint continues by alleging that in November, 1947, pursuant to the provisions of the aforesaid section, they reacquired 54.5 acres of the aforesaid property. Then in November, 1949,

35.8 acres of the aforesaid area was sold to the Town of Hempstead, which sale was alleged to be contrary to the provisions of the aforesaid statute. It is also alleged by the Seidens that on or about December 21, 1949, Larson and Mather caused to be advertised for sale, without regard and not subject to the claimed priority of the plaintiff, the remaining 79 acres of said property. And in the latter part of the year 1949, Larson and Mather agreed to an occupancy of 23.8 acres of the property by the Veterans' Emergency Housing until September 30, 1954. That too was claimed by the Seidens to be contrary to the provisions of the said section 23 of the Surplus Property Act. The plaintiffs, Seidens, in the aforesaid action prayed for an injunction to restrain the defendants from proceeding with the advertisement for sale of any part of the aforesaid property, and from interfering in any way with the priority claimed by the Seidens.

A motion was thereupon made in that suit to dismiss the complaint because it failed to state a claim upon which relief could be granted, and also for summary judgment.

An affidavit of Thomas B. Peyton, in opposition to the plaintiff's motion for a preliminary injunction, forms part of the record certified by the clerk of the United States Court of Appeals for the District of Columbia. He recites that he is Director of the General Real Estate Disposal Division of the General Services Administration, and avers that between the date of the acquisition of the property and the time it was declared surplus, the Department of the Navy had expended more than $4,000,000 in constructing buildings and other improvements on the property. The Surplus Property Act of 1944 required the Administrator to classify real property. Peyton says:

"One of the first necessary classifications was to segregate property either as 'Section 23, Real Property', i. e. property which would carry a former owner priority, or 'Non-Section 23, Real Property', i. e. property which would not carry such a priori-

ty. This type of classification was necessary since, under section 23 only certain types of property were to be subject to re-purchase by the former owner * * *. Acting pursuant to the directive (dated March 19, 1947) a partial classification was made on July 21, 1947 * * *. This classification covered only the acreage south of Lido Road (hotel site), together with the sewerage disposal and water supply system. On October 27, 1947, however, the entire property was classified * * * (It is this classification which forms the basis of this suit and which the plaintiffs are asking the court to change) * * *. In this October classification, the earlier classification of the area south of the road was continued, i. e. it remained Section 23, Real Property, or property which the former owner would have the right to re-purchase. The area north of the road, however, consisting of 114.806 acres, was classified as 'Non-Section 23, Real Property (War Housing)'. The classification contains the following statement: 'The temporary buildings located on the Country Club property north of Lido Road * * * are now occupied as Veterans' Emergency Housing under the jurisdiction of New York Housing Authority, by virtue of a permit granted to Federal Public Housing Authority by the Navy Department * * *'."

The Peyton affidavit further reveals that at the request of the plaintiffs the classification of this property was reviewed by the General Board. A hearing was held on August 9, 1949, and on September 1, 1949 the Board reached the conclusion that "the classification of the United States Naval Training Center at Long Beach, New York, lying north of New York, be retained in its present classification as 'Non-Section 23, Real Property'." Peyton also recites that on October 14, 1947 the property south of Lido Road, the hotel property, which had been classified Section 23, Real Property, was sold to the plaintiffs for the sum of $653,500, with a down payment of $130,700. The balance was secured by a bond and mortgage. So that at the time of this sale, the plaintiffs knew that the remainder of the property north of Lido Road had been classified as Non-Section 23, and consequently not subject to the priority accorded a former owner.

The Seidens' action in the District Court of the District of Columbia came on for hearing on January 26, 1950, and the plaintiffs' motion for a preliminary injunction was denied, and the defendant's motion to dismiss and for summary judgment was granted. On appeal, the United States Court of Appeals for the District of Columbia, Seiden v. Larson, 88 U.S.App.D.C. 258, 188 F.2d 661, affirmed the judgment of the District Court.

■■ The basic inquiry on this motion must be whether the court has jurisdiction to entertain this counterclaim. No jurisdiction is recited in the Surplus Property Act of 1944. There is no authority, directly or by implication, authorizing an action against the United States or its delegated officers. The defendants in their counterclaim rely on section 23 of that Act, but no such jurisdiction is conferred therein. The weakness of the defendants' position in this regard is that the Sovereign, the United States of America, cannot be sued without its consent. Waiver of federal immunity and sanctioning of actions against the United States are set forth in special acts as, for example, the Federal Tort Claims Act and the Tucker Act, 28 U.S.C.A. §§ 1346, 2401, 2402, 2671 et seq.; see United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888.

■■ Now in the present case the court has not the power to read into the contract between the parties any provision that is not found therein, and there may not be interpolated by the court a modification of the Surplus Property Act such as would give jurisdiction to review the act of the Government or any of its

delegated officers. Even if the act of the agency in failing to give priority to the defendants herein were viewed as a tort, there is nothing in the Federal Tort Claims Act which would embrace a situation such as is here presented. See 28 U.S.C.A. § 2680(a); Dalehite v. U. S., 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427.

At first blush it might seem that since this court has jurisdiction to entertain the Government's action for breach of the contractual obligation between the parties, any right accruing to the defendants stemming from the contract should be within the jurisdiction of the court also. But see 106 A.L.R. Annotated, 1242, where it is said:

> "It appears to have been almost universally conceded, since the United States as a sovereign cannot be sued without its consent, that as expressly stated in Tillou v. United States, 1 Ct.Cl. (F.) 220 * * * [United States v. Eckford], 6 Wall. 484, 18 L.Ed. 920, no action, whether in the nature of an original action or setoff, or cross-demand, can be maintained against the United States without a Congressional enactment to sustain and authorize it."

Authorities which would permit such setoffs or counterclaims depend for their validity on a showing that the setoff or counterclaim is one arising out of the same transaction. In the present case the defendants are unable to make that showing, for the complaint of the Government is based on a violation of the contract of November 12, 1947 wherein the Government seeks a judgment arising out of the breach of that contract. Contrariwise the counterclaim set up by the defendants in their answer arose not from the 1947 contract, but on the alleged ground that the Government has refused the defendants' alleged demands for the repurchase of 115 acres which were part of the parcel purchased by the Government from the defendants prior to the making of the contract forming the subject of the complaint.

So that on all grounds it appears that the court is without jurisdiction to entertain the counterclaim, whether that alleged right had been set forth in an action in which the defendants here were the plaintiffs, as in Seiden v. Larson, supra, or herein where the Government is the plaintiff.

The motion, therefore, of the plaintiff to dismiss the counterclaim for want of jurisdiction is granted. Since the court has no jurisdiction, it will not pass upon the merits of the counterclaim.

Settle order on notice.