The judgments of the Municipal Court will be affirmed.

In the Matter of The Complaint of **NORTHERN TRANSATLANTIC CARRIERS CORPORATION** and Transocean Tankers Corporation as Owners of S.S. **OCEAN EAGLE** for Exoneration from or Limitation of Liability.

Civ. No. 278-68.

United States District Court
D. Puerto Rico.

June 30, 1969.

Antonio M. Bird, San Juan, P. R., Burlingham, Underwood, Wright, White & Lord, New York City, for plaintiffs.

Arturo Aponte, Dept. of Justice, San Juan, P. R., Nicolás Jiménez, Hato Rey, P. R., for defendant.

## MEMORANDUM—ORDER

FERNANDEZ–BADILLO, District Judge.

This cause came to be heard on a motion to dismiss filed by the claimant, The Commonwealth of Puerto Rico, against the plaintiffs' counter-claim and set-off filed on July 18, 1968.

On March 3, 1968, the SS Ocean Eagle broke in two in the entrance to the San Juan Harbor. On April 29, 1968, the plaintiffs herein filed a petition seeking to limit their liability under the Limitation of Liability statute of the United States, 46 U.S.C.A. § 181 et seq.

On June 14, 1968, the Commonwealth of Puerto Rico filed a claim in the limitation of liability proceeding alleging among other things that the plaintiffs had no right to limit their liability; that the SS Ocean Eagle was in an unseaworthy condition since the moment it left Puerto de la Cruz, Venezuela; of which condition the plaintiffs had full privity and knowledge; and that the breaking in two of the SS Ocean Eagle was due to the unseaworthy condition of the ship and/or of the negligence of her master and/or crew.

On July 18, 1968, the plaintiffs filed a counter-claim against the Commonwealth of Puerto Rico alleging in substance that the occurrence of the accident was due to the inadequacy of facilities at the San Juan Harbor and was caused by the negligent acts or omissions of the Commonwealth of Puerto Rico and move the court to grant plaintiffs the sum of approximately $2,000,000.00 in damages.

On July 22, 1968 the claimant, the Commonwealth of Puerto Rico, moved this court to dismiss the counter-claim and set-off. The claimant's contention in this court was two-fold; Firstly, the claimant contended that the Common-

wealth of Puerto Rico could not be sued or counter-claimed without its consent. Secondly, it contended that the plaintiffs failed to comply with Law 104 of June, 1955, as amended, 32 L.P.R.A. § 3077 et seq., which requires prior notice be given to the Secretary of Justice of the Commonwealth of Puerto Rico, as a jurisdictional requirement to an action for damages against the Commonwealth of Puerto Rico. The court agrees with this contention.

The Commonwealth of Puerto Rico has full power of local determination with autonomy similar to that of a State of the Union and possesses many of the attributes of sovereignty possessed by the States, immunity of suit being one of them. Porto Rico v. Rosaly y Castillo, 227 U.S. 270, 33 S.Ct. 352, 57 L.Ed. 507, 1913; Puerto Rico v. Shell Company, 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235, 1937; Bonet v. Yabucoa Sugar Company, 306 U.S. 505, 59 S.Ct. 626, 83 L.Ed. 946, 1939. The present Commonwealth status has not altered Puerto Rico's sovereign immunity. Krisel v. Duran, 258 F.Supp. 845, aff'd, 386 F.2d 179, 1967; Alcoa Steamship Co., et al. v. Perez, 295 F.Supp. 187, 1968; Salkin v. Commonwealth of Puerto Rico, 408 F.2d 682 (1969 1st Cir.).

Although the plaintiffs seem to recognize the sovereign immunity of the Commonwealth of Puerto Rico, their contention is that the Commonwealth waived its sovereign immunity by filing its claim in the limitation of liability proceeding. This is not so. The limitation of liability act was enacted mainly to encourage ship building and the maritime industry in general. Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903, 1941; Coryell v. Phipps, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363, 1943; Gilmore and Black, the Law of Admiralty, Chapter X. Once the court in a limitation of liability proceeding acquires jurisdiction, it is exclusive of all other forums; Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520, 1931; Ex parte Green, 286 U.S. 437, 52 S.Ct. 602, 76 L.Ed. 1212, 1932; The Central

States, D.C., 9 F.Supp. 934, 1935. Furthermore, an admiralty court can enjoin a State from bringing a suit in the State court after the limitation of liability has been filed. The Central States, *supra*. This is so, because whichever rights the State had arising out of the incident must be litigated in the limitation of liability proceeding. Otherwise, the sovereign would be forever barred from instituting any suit in any other court, United States v. Hamburg American Line, 2 Cir., 212 F. 40, L.R.A.1917C, 1103, 1914. Thus the Commonwealth of Puerto Rico had to file its claim in the limitation of liability proceedings or run the risk of losing its rights.

The result reached by us is not altered by the fact that this court is sitting in admiralty. A unanimous court in In re State of New York, 256 U.S. 490, 41 S. Ct. 588, 65 L.Ed. 1057, 1921, held: "That a state may not be sued without its consent, is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decision of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against the state without consent given. * * *."

"Nor is the admiralty of maritime jurisdiction exempt from the operation of the rule."

In support of their contentions the plaintiffs cited Luckenbach SS Co., Inc., et al. v. The Thekla, 266 U.S. 328, 45 S. Ct. 112, 69 L.Ed. 313, 1924. In that case it was held that when the United States comes into a court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter. Nonetheless, that case is distinguishable from the case at bar in that a collision was involved. As stated in United States v. Shaw, 309 U. S. 495, 60 S.Ct. 659, 84 L.Ed. 888, 1940, "There is little indication in the facts or language of The Thekla to indicate an intention to permit generally unlimited

cross-claims," at page 503, 60 S.Ct. at page 662. The Court further held: "The subject matter of a suit for damages in collision is not the vessel libelled, but the collision. Libels and cross-libels for collision are one litigation and give rights to one liability. In equal fault, the entire damage is divided. As a consequence, when the United States libels the vessel of another for collision damages and a cross-libel is filed, it is necessary to determine the cross-libel as well as the original libel to reach a conclusion as to liability for the collision."

Furthermore and distinct from the present case, The Thekla ruling was motivated by obvious consideration of public policy enacted into law in the Suits in Admiralty Act of 1920, 46 U.S.C.A. § 742. In the Thekla case the United States was the owner, pro hac vice, of the SS F. J. Luckenbach, one of the vessels involved in the collision, object of the case. Hence, as a ship owner operating ships which constantly were exposed to collision, could not claim sovereign immunity as a defense. In the present case the Commonwealth of Puerto Rico is not filing a claim as a ship owner. It is filing a claim as a sovereign who has suffered damages to its property and natural resources. Obviously, the public policy consideration present in The Thekla decision is not present in the case at bar.

As stated in *Shaw, supra,* "The objection to a suit against the United States is fundamental, whether it be in the form of an original action, or a set-off, or a counter-claim. Jurisdiction in either case does not exist unless there is specific congressional authority for it. * * *."

■ Moreover, the present counter-claim is nothing but a tort action against the Commonwealth of Puerto Rico for negligent acts or omissions. As a general proposition, the mere fact that the sovereign institutes or brings a suit is not a waiver of all the conditions and pre-requisites necessary to make the sovereign amenable to suit. Nassau Smelting and Ref. Co. v. United States,

266 U.S. 101, 45 S.Ct. 25, 69 L.Ed. 190, 1924; Illinois Cent. R. Co. v. State Public Utilities Commission, 245 U.S. 493, 38 S.Ct. 170, 62 L.Ed. 425, 1918; United States v. United States Fidelity and Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894, 1940; State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235, 1937; United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058, 1941.

■ The second argument advanced by the claimant with which the court fully agrees, is that plaintiffs failed to comply with Law 104 of June, 1955, as amended by Law 121 of June, 1966, 32 L.P.R.A. § 3077 et seq., requiring, as a pre-requisite to suit, that notice to the Secretary of Justice of the Commonwealth of Puerto Rico be given whenever any person has a claim for damages caused by negligent acts or omissions of the Commonwealth of Puerto Rico.

During oral argument counsel for plaintiffs and claimant stipulated that the Secretary of Justice was not notified of the claim for damages as required by law.[1]

■ Both the legislative intent and the applicable case law clearly demonstrate that the requirement of notice of law 104, as amended, is of strict compliance and of a jurisdictional nature. Campis v. People of Puerto Rico, 67 P. R.R. 366, 1947; The Porto Rican and American Insurance Company v. People of Puerto Rico, 68 P.R.R. 629, 1948; Jimenez v. People of Puerto Rico, 83 P.R. R. 195, 1961.

In the legislative record of Puerto Rico, Volume XX, page 845, April 10, 1966, it is said that "* * * it is provided that no judicial action may be commenced for damages arising by reason of negligence or fault if prior compliance has not been made regarding the notice requirement * * *" Furthermore, the Supreme Court of Puerto Rico in Mangual v. Superior Court, 88 P.R.R. 491, Spanish Edition, 1963, interpreting a law similar to law 104, which authorizes suits against municipalities, concluded: "All of the above brings us to the conclusion that in Puerto Rico the filing of the notification is a previous condition of strict compliance in order to be able to sue the municipality." Both Law 104, as amended by Law 121 as well as Law 142, 21 L.P.R.A. § 1603, of January 9, 1961, authorizing suits against the municipalities are similar to the municipal law of New York in respect to prior notice requirement before a suit against a sovereign is filed. In County of Nassau v. Wolfe, 51 Misc.2d 848, 273 N.Y.S.2d 984, 1966, it was held, "the fact that it was the County which initiated the litigation does not relieve the defendant from complying with the

---

1. Section 3077a provides as follows:

(a) Every person who has a claim of any kind against the Commonwealth of Puerto Rico for damages to persons or property, caused by a culpable or negligent act of said Commonwealth, shall present to the Secretary of Justice a written notice stating in clear and concise manner, the date, place, cause and general nature of the damages suffered, the names and addresses of witnesses, and the address of the claimant, and the place where he received first aid medical treatment.

(b) Said notice shall be delivered to the Secretary of Justice by registered mail or personally, or in any other authentic way recognized by law.

(c) The said written notice shall be presented to the Secretary of Justice within the ninety (90) days following the date in which the claimant became aware of the damages claimed. If the claimant is mentally or physically incapacitated for making said notice within the prescribed term, he shall not be subject to the above limitation but must serve said notice within the thirty (30) days following the date in which the incapacity ceases.

(d) * * *

(e) No judicial action of any kind may be brought against the Commonwealth of Puerto Rico for damages caused by a culpable or negligent act of the Commonwealth, unless the written notice has been served in the form and manner and within the terms prescribed in this section, unless there is just cause therefor. This provision shall not be applicable to those cases in which the liability of the Commonwealth is covered by an insurance policy.

(f) * * *

provisions of Section 50 and 50–1 of the General Municipal Law, where defendants seek affirmative relief by way of counter-claim. The institution of this action by the County creates no waiver or estoppel to assert the requirements of the sections." Rudolph v. City of New York, 191 Misc. 947, 77 N.Y.S.2d 788, 1947; Broome County v. Binghamton Taxi Cab Co., 190 Misc. 925, 75 N.Y.S.2d 423, 1947.

The prior notice requirement is jurisdictional and it can be raised even after a verdict has been rendered; Galloway v. City of Winchester, 299 Ky. 87, 184 S.W.2d 890, 1945; Thompson v. City of Charleston, 118 W.Va. 391, 191 S.E. 547, 1937; Thompson v. City of Chattanooga, 143 Tenn. 477, 226 S.W. 184, 1920; Berry v. City of Helena, 56 Mont. 122, 182 P. 117, 1919.

In view of the foregoing it is hereby ordered that claimant's motion to dismiss counter-claim and set-off be granted.