**Clinton E. GARDNER, Plaintiff,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**UNITED STATES of America, Third-Party Plaintiff-Appellee,**

v.

**Alastair KYLE, Third-Party Defendant-Appellant.**

**No. 762, Docket 32590.**

United States Court of Appeals, Second Circuit.

Argued April 27, 1971.

Decided July 1, 1971.

Alastair Kyle (pro se), for third-party defendant-appellant.

Milton Sherman, Asst. U. S. Atty., New York City (Whitney North Seymour Jr., U. S. Atty. for Southern District of New York, Michael D. Hess, Asst. U. S. Atty., New York City, on the brief), for third-party plaintiff-appellee.

Before HAYS and FEINBERG, Circuit Judges, and BLUMENFELD, District Judge.*

PER CURIAM:

In 1963, the plaintiff Clinton E. Gardner commenced an action against the United States under 26 U.S.C. § 7422 and 28 U.S.C. § 1346(a) (1) for refund of tax penalties [1] allegedly assessed in error against him by the Internal Revenue Service pursuant to 26 U.S.C. §§ 6671 and 6672. The United States served a third-party summons and complaint upon the appellant Kyle who, it contended, would be liable to the United States for all or part of any amount recovered by Gardner. Kyle filed an answer and a counterclaim against the United States. Judge Levet's dismissal of the counterclaim on April 15, 1966, for lack of subject matter jurisdiction, furnishes the basis for this appeal.

Kyle's counterclaim sought damages totalling $3,474,700 from the United States. He charged the government with defamation for releasing several false press announcements ($2,250,000 damages, $35,000 legal fees); conversion of books and records of a corporation of which he was president ($20,000 damages); false imprisonment ($1,000,000 damages, $4,000 legal fees); assault ($5,000 damages); improper levy on the bank account of the corporation of which he was president ($700); and for taking his time for public use for

---

* Of the District of Connecticut, sitting by designation.

1. Gardner sought a refund of $3,723.90, plus interest.

eight years ($160,000 damages).[2] The district judge correctly characterized these claims as allegations of torts committed by the United States against Kyle, most of which are specifically excluded from the United States' waiver of its sovereign immunity from suit. 28 U.S.C. § 2680(h). Since the United States has not consented to be sued for these torts, the court ruled that it was without jurisdiction to entertain a suit based on them.[3]

■ Kyle's counterclaim is a suit against the sovereign and it is dispositive that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, * * * and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). A federal court has no jurisdiction of a suit against the federal governnment unless its consent to be sued is affirmatively established by statute. United States v. Shaw, 309 U.S. 495, 500–501, 60 S.Ct. 659, 84 L.Ed. 888 (1940).

On appeal, Kyle agrees that the torts alleged in his counterclaim are excluded from the operation of the government's consent to be sued established by the Federal Tort Claims Act. We are faced with the contention which he raises for the first time here that the fifth and ninth amendments to the United States Constitution establish the consent of the government to be sued; and that jurisdiction is afforded by 28 U.S.C. §§ 1331 or 1346, or by the fifth amendment itself since it is "self-executing."

The fifth amendment does establish the constitutional right "to recover just compensation for property taken by the United States for public use. * * *" Jacobs v. United States, 290 U.S. 13, 16, 54 S.Ct. 26, 27, 78 L.Ed. 142 (1933). This right is, however, confined to a taking of an interest in property which the Supreme Court has defined as "the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it." United States v. General Motors, 323 U. S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945).

■■ The appellant does not allege that any interest of his in property was taken by the government. Nor does he allege that he was deprived of his liberty without due process of law. The fifth amendment cannot be read to impose liability on the sovereign for torts against the person committed by federal employees. As the Supreme Court has stated, "[i]t is not our right to extend the waiver of sovereign immunity more broadly than has been directed by the Congress." United States v. Shaw, *supra*, 309 U.S. at 502, 60 S.Ct. at 662. Thus, 28 U.S.C. § 1331, which provides general federal question jurisdiction, is not applicable here since appellant's claim does not arise "under the Constitution, laws, or treaties of the United States."

Section 1346(a) (2) [4] of Title 28 U.S. C. does establish jurisdiction to enter-

---

2. These claims arise out of Kyle's conviction for conspiracy and mail fraud in 1957 and his imprisonment, which he claims were "unjust" because the Assistant United States Attorney suppressed evidence material to his case. After a hearing on the matter of suppression in federal court, Kyle's conviction was vacated and he was released from prison.

3. Appellant's claim for conversion was dismissed since he alleged no ownership or transferee interest of his own in the books and records he claimed had been converted. Kyle does not challenge this basis for the dismissal of his claim.

4. Section 1346(a) (2) in pertinent part provides:

"The district courts shall have original jurisdiction, * * * of:

* * * * *

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. * * *"

tain suits on certain kinds of nontortious claims against the federal government, but it did not provide a basis for federal jurisdiction in the court below since that statute sets an absolute limit of $10,000 for such suits in the district court. The damages sought by appellant for torts committed by government employees far exceed this amount.

Finally, we find no merit in the appellant's contention that he has a right to sue the United States, guaranteed by the ninth amendment to the federal Constitution on the ground that it incorporated as of the date of its adoption the doctrine of "petition of right" against the King as part of the common law of England. This argument was authoritatively rejected long ago.[5]

The judgment is affirmed.

5. Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 411–412, 5 L.Ed. 257 (1821). Furthermore, even in England suits by petition of right required the consent of the Sovereign. "[S]o far as analogy is to take place, such petition in a state could only be presented to the sovereign power, which surely the governor is not. The only constituted authority to which such an application could, with any propriety, be made, must undoubtedly be the legislature, whose express consent, upon the principle of analogy, would be necessary to any further proceeding." Chisholm v. Georgia, 2 U.S. (2 Dall.) 419, 446, 1 L.Ed. 440 (dissent of Mr. Justice Iredell). See also, Jaffe, Suits Against Governments and Officers: Sovereign Immunity, 77 Harv.L.Rev. 19–29 (1963).