**Lawrence J. HOSTE, Plaintiff,**

v.

**SHANTY CREEK MANAGEMENT, INC., Defendant.**

**No. 1:02 CV 14.**

United States District Court,
W.D. Michigan,
Southern Division.

July 17, 2002.

W. Francesca Ferguson, US Attorney's Office, Grand Rapids, MI, for Dept. of Health and Human Services.

P. David Palmiere McConnell & Palmiere, P.C., Bloomfield Hills, MI, Terrance J. Odom Terrance J. Odom, P.C., Troy, MI, for Lawrence J. Hose.

Margaret A. Costello Dykema Gossett PLLC,Detroit, MI, for Shanty Creek Management, Inc.

*OPINION AND ORDER ON MOTION OF THE SECRETARY OF HEALTH AND HUMAN SERVICES TO VACATE STATE COURT DECISION TO SANCTION MEDICARE*

MILES, Senior District Judge.

Plaintiff Lawrence J. Hoste filed a personal injury action against defendant

Shanty Creek Management, Inc. ("Shanty Creek") in Michigan's Antrim County Circuit Court in 1993, asserting claims against Shanty Creek arising out of his alleged injury in a skiing accident in 1990. On January 8, 2002, the Secretary of the United States Department of Health and Human Services ("the Secretary") filed a Notice of Removal asserting, as a basis for removal, that the state court had issued an order sanctioning Medicare for failing to send an authorized representative to appear at a settlement conference.

The matter is currently before the court on the Secretary's motion to vacate the state court decision sanctioning Medicare (docket no. 5). Neither plaintiff nor Shanty Creek has filed a written response to the motion; however, based on certain arguments made by these parties in seeking a remand of the action to state court, the court assumes that they oppose the motion.[1] For the reasons to follow, the court grants the motion.

### Background

The Secretary's motion to vacate presents a discrete legal question, entirely separate from the substance of the underlying proceedings. However, the court's ruling can be more fully understood in the context of this action's somewhat unusual procedural posture. The following summary is derived from information taken largely from plaintiff's previously-filed motion for remand.

The personal injury case against Shanty Creek was set for jury trial in the state

1. Previously, plaintiff filed a Motion for Remand Due to Improper Removal from State Court (docket no. 8), in support of which Shanty Creek filed a written concurrence (docket nos. 10, 11). The court denied the motion for remand insofar as it sought a full remand of this matter to state court; however, the court did order a partial remand of issues presented by plaintiff Hoste's personal injury claims against Shanty Creek, retaining jurisdiction for the sole purpose of resolving those issues raised by the Secretary's present motion to vacate the state court decision to sanction Medicare.

786

court on December 11, 2001. The trial was to be preceded by a settlement conference on November 16, 2001. However, on November 8, 2001, when counsel for both plaintiff and Shanty Creek were appearing before the state court for the purpose of arguing certain pretrial motions, someone raised the issue of settlement talks. According to plaintiff, the attorneys informed the state court judge (1) "that substantive settlement talks between them had been unavailing, chiefly due to the large size and number of potential lien claims against the proceeds of any judgment or settlement[,]" and (2) "that the case might have to be tried simply because of the parties' inability to acquire information and identify the appropriate decision-makers on the various lien claims." Plaintiff's Motion for Remand, at 3. On November 9, 2001, one day after the parties advised him of these purported obstacles to settlement, plaintiff contends that the state court judge "*sua sponte*" issued orders directing each of the various lien claimants -including Medicare- to send a representative to appear at the settlement conference scheduled for November 16, 2001. *Id.*

On November 9, 2001, the state court faxed to the office of the United States Attorney for the Western District of Michigan a copy of an order requiring an Assistant United States Attorney "or some other person with complete authority to compromise and settle the Medicare lien" to "attend in person the settlement conference" scheduled for November 16, 2001. The order stated that it "appear[ed] to the Court that the attendance of a Medicare representative would be critical to settlement of this proceeding." There is no dispute that this order was received by the United States Attorney, nor is there any dispute that the United States Attorney did not send a representative to the settlement conference, having informed the state court judge by letter dated No-

vember 15, 2001 that (1) she had not received notice of the proceedings before receipt of the court's order on November 9, 2001; (2) that she had not received a request for Medicare lien information before receipt of the court's order; (3) that neither she nor the Medicare staff had the information necessary to inform the state court or the parties of the amount of the Medicare lien; (4) that she had no information which could be of help to the parties in settlement negotiations; (5) that she would make an effort to be of assistance by forwarding lien information to the parties once the amount of the lien had been determined; (6) that Medicare would assert its federal statutory lien upon all proceeds paid to or on behalf of the plaintiff, including bringing the matter to a federal court, if necessary; and (7) that she was not authorized to attend the settlement conference on November 16, 2001, the matter being a tort case to which no federal agency had been named a party. The United States Attorney also informed plaintiff's attorney by letter that while she would be willing to provide plaintiff with a lien calculation, she could not give a definite date by which that number would be available.

According to plaintiff, the settlement conference took place in state court as scheduled on November 16, 2001, with all potential lien claimants appearing through their representatives, with one exception: no one appeared who was authorized to compromise the Medicare lien. Apparently fearing that this jeopardized the potential "final settlement" of the action, plaintiff contends that he then brought an "oral motion" in the state court to bar Medicare from asserting its lien "as a sanction for failure to attend the conference as ordered." Plaintiff's Motion for Remand, at 4. Plaintiff contends that he also sought "alternative sanctions" against Medicare in

the form of a $30,000 "costs assessment" (allegedly an estimate of the value of attorney time and travel costs to those who did attend the settlement conference), payable in the event that the lien bar was determined to be unenforceable. According to plaintiff, the state court granted this relief and, as a result, plaintiff and Shanty Creek placed a settlement on the record. The Secretary filed his Notice of Removal after learning of the sanctions which had been granted by the state court. By that time, plaintiff's case against Shanty Creek had been pending in the state court for approximately nine years.[2]

## Analysis

■ While the procedural posture of this case might be unusual, the situation in which the plaintiff apparently finds himself is not. Plaintiff is not the first litigant who faces the prospect of having to resolve the issue of what Medicare might be owed based on a personal injury settlement award. *See generally Zinman v. Shalala,* 67 F.3d 841 (9th Cir.1995) (action filed by nationwide class of Medicare beneficiaries who received or will receive lump-sum insurance settlement awards from third parties in connection with Medicare-covered injuries, challenging Secretary of Health and Human Services' interpretation and implementation of Medicare Secondary Payer provisions). Under the federal "Medicare Secondary Payer" statutes, Medicare pays for certain costs associated with the health care of qualified individuals, but does not pay for the costs of health

**2.** Plaintiff and Shanty Creek both apparently attach a degree of importance to the fact that the case has been pending in state court for an extended period of time, for both mention this fact at the outset of their respective filings. *See* Plaintiff's Motion for Remand Due to Improper Removal from State Court, at 1–2, ¶ B(1); Brief in Support of Shanty Creek's Concurrence in the Relief Sought by Plaintiff's Motion to Remand, at 1. According to plaintiff, the age of this case is due (at least in part) to the issuance of a stay, in effect between 1994 and 1999, while the parties litigated issues raised in a parallel state worker's compensation case. Plaintiff's Motion for Remand to State Court, at 3, ¶ 1. (In a ruling issued on May 4, 1999, the Michigan Supreme Court determined that plaintiff, as a member of the National Ski Patrol, was not an employee of Shanty Creek under Michigan's Worker's Disability Compensation Act and was not entitled to benefits thereunder. *Hoste v. Shanty Creek Mgmt., Inc.,* 459 Mich. 561, 592 N.W.2d 360, *reh'g denied,* 460 Mich. 1201, 598 N.W.2d 336 (1999)).

It is amazing to this court that, having endured a five-year stay to seek resolution of state worker's compensation issues, plaintiff and Shanty Creek were apparently unwilling to wait more than several days for a response from the proper federal authorities regarding the amount of any Medicare reimbursement to be sought by the federal government. By his own admission, plaintiff orally moved for sanctions on November 16, 2001, even though no federal authorities had been notified of the settlement conference until at least November 9, 2001. What is even more amazing—and disturbing—is that it appears that plaintiff's own attorneys could well have provided information which would have enabled the parties in the state proceeding to at least estimate the amount of Medicare reimbursement. Secretary of Health and Human Services' Response to Plaintiff's Motion for Remand and to Shanty Creek's Concurrence Therein, at 3 ("because the plaintiff's attorneys had not provided information needed to calculate the amount of Medicare's claim, [the government] had not reached a final decision on the amount of Medicare's claim at the time the state court sanctioned Medicare"). It seems certain, based on plaintiff's statements contained in his motion for remand, that his own counsel and/or counsel for Shanty Creek fostered the state court's seemingly sincere but erroneous belief that the non-appearance of a federal representative at the settlement conference created an obstacle to meaningful negotiations. However, because this court concludes that the federal authorities were not required to appear before the state court as ordered to in order to assert any defenses to appearance, these observations are purely academic.

care services for which payment has been made or can reasonably be made by a third party, such as a liability insurer. *Cox v. Shalala,* 112 F.3d 151, 154 (4th Cir.1997) (citing 42 U.S.C. § 1395y(b)(2)(A)(ii)). When the government has information that medical care is needed for an injury caused by another party, a "conditional payment" can be made, which the government can later recover. *Cox,* 112 F.3d at 154 (citation omitted). The "Secondary Payer" statutes in effect make Medicare a secondary payer with full rights of reimbursement and subrogation. *See id.; see also Zinman,* 67 F.3d at 844–845. These provisions reflect an "overarching statutory purpose of reducing Medicare costs.... A full recovery of conditional payments [reduces] such costs." *Zinman,* 67 F.3d at 845.

The Secretary argues that the state court's order sanctioning Medicare is invalid because (1) the state court lacked jurisdiction over federal authorities which would have enabled it to require their presence at a state court settlement conference, and (2) the state court's actions were barred by sovereign immunity. Both of these assertions having merit, the state court's order granting plaintiff's motion for sanctions must be vacated.

■ The Secretary's defense to the state court's action is sovereign immunity. "The United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United*

*States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Therefore, "without specific statutory consent, no suit may be brought against the United States," "[n]o officer by his action can confer jurisdiction," and "[e]ven when suits are authorized they must be brought only in designated courts." *United States v. Shaw,* 309 U.S. 495, 500–501, 60 S.Ct. 659, 84 L.Ed. 888 (1940). As the Supreme Court stated in *Shaw,*

> The reasons for this immunity are imbedded in our legal philosophy. They partake somewhat of dignity and decorum, somewhat of practical administration, somewhat of the political desirability of an impregnable legal citadel where government as distinct from its functionaries may operate undisturbed by the demands of litigants....

309 U.S. at 501, 60 S.Ct. 659.

The state court identified no federal statutory basis for its assertion of authority to require the attendance of a Medicare representative at one of its proceedings, and it is apparent that no basis was identified because none existed.[3] Parties asserting Medicare-related claims must proceed through "the special Medicare review route ... set forth in a complex set of statutory provisions" contained in the Medicare statutes. *Shalala v. Illinois Council on Long Term Care, Inc.,* 529 U.S. 1, 7–8, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000). These provisions are sufficiently broad to cover the situation presented here, where parties claiming to need "advance knowledge" of what Medicare might

---

3. Plaintiff and Shanty Creek have both acknowledged that the state court judge did not base his decision on any federal authority. *See* Plaintiff's Motion for Remand at 7–8 ("The state court judge resolved no contests of fact, nor issues of law, that in any way were based on federal statutes, regulations or federal common law.... The entirety of the relevant state court proceedings are simply these:

[Medicare] was ordered by a state judge, *under state law,* to send a representative to a specific conference at the courthouse") (emphasis supplied); Shanty Creek's Concurrence, at 5 ("No question of federal law is presented with respect to a ruling by a state court to sanction a person or entity for failing to obey an Order to attend a settlement conference").

*later* do seek, for their own purposes, to involve federal officials in legal action. *See id.* at 10, 120 S.Ct. 1084 (special Medicare review channel applies where individual who *might* later seek money or some other benefit from or contest the imposition of a penalty by federal agency challenges, in advance, the lawfulness of a federal provision that *might* later bar recovery of the benefit or authorize the imposition of a penalty). These statutory provisions also demand that all legal attacks be channeled through the federal agency without premature interference by different individual courts, thus assuring the agency a greater opportunity to apply, interpret, or revise policies, regulations, or statutes. *Id.* While "this assurance comes at a price, namely, occasional individual, delay-related hardship["] this was the judgment of Congress. *Id.*[4]

▉ While there exists no federal statutory basis for finding a waiver of sovereign immunity under the circumstances presented by this case, there is likewise no federal regulatory basis for finding a waiver. Even if the state court's order is viewed as merely a request for testimony of a federal employee regarding the amount of Medicare's claim, neither the state court nor the parties complied with federal regulations governing testimony of federal employees. Pursuant to federal regulations known as *Touhy* regulations (named after *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), in which the Supreme Court held that subordinate federal officials could not be held in contempt for

failing to comply with a court order that was converse to a valid federal regulation)), Department of Justice ("DOJ") employees are prohibited from producing or disclosing, in response to a demand, any information or material contained in DOJ files without prior approval of the proper DOJ official in accordance with specified procedures. 28 C.F.R. § 16.22(a). Certain procedures also apply if oral testimony is sought in a case in which the United States is not a party. 28 C.F.R. § 16.22(c). Those procedures were not followed here. In addition, pursuant to *Touhy* regulations promulgated by the Department of Health and Human Services ("DHHS"), certain procedures must be followed if testimony of a DHHS employee is sought in a case in which the DHHS is not a party. 45 C.F.R. § 2.4(a). These procedures were likewise not followed here. In any event, sovereign immunity bars the enforcement of a state court order requiring testimony by an unwilling federal officer. *Edwards v. United States Department of Justice,* 43 F.3d 312, 317 (7th Cir.1994). Moreover, to the extent that the United States Attorney promised to provide a lien calculation at some point in the future, "disclosure of factual information does not effect a waiver of sovereign immunity as to other related matters." *Smith v. Cromer,* 159 F.3d 875, 880 (4th Cir.1998), *cert. denied,* 528 U.S. 826, 120 S.Ct. 76, 145 L.Ed.2d 64 (1999).

▉ Whether the state court believed the attendance of a federal representative to be "critical" (as its order stated) or merely helpful, the legal reality is that that

4. This is not a situation, as in *Fanning v. United States,* 202 F.R.D. 154 (E.D.Pa.2001), in which there has been a demand for reimbursement issued by the responsible agency. In that case, such a demand was made, and the court concluded that judicial review was therefore not precluded and sovereign immunity did not apply, notwithstanding the hold-ing of *Shalala v. Illinois Council on Long Term Care, Inc.,* 529 U.S. 1, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000). *Fanning,* 202 F.R.D. at 170–171. In contrast here, no demand for reimbursement has been made; instead, the parties to the state court litigation simply wished to know before settling the case what any federal demand might be.

court was not relying on a particular waiver of federal sovereign immunity in requiring participation of a federal representative in a state proceeding. Because no specific waiver existed under the circumstances presented, the order requiring the attendance of a Medicare representative at the settlement conference was invalid and need not have been obeyed. And, the order itself being invalid, the sanctions which the state court granted based on non-compliance with the order are likewise invalid. Indeed, the monetary sanction or "cost assessment" is invalid in any event, insofar as sovereign immunity saves the federal government from a court-imposed monetary assessment not expressly authorized by applicable federal law. *United States v. Horn*, 29 F.3d 754, 767 (1st Cir. 1994).

Plaintiff argues that a conclusion that the state court lacked jurisdiction to impose a "remedy" for a federal representative's refusal to appear necessarily means that this court lacks jurisdiction to vacate the state court's ruling. This argument appears to be based on the doctrine of "derivative jurisdiction." Plaintiff's Motion for Remand, at 14. However, plaintiff's argument reflects a misunderstanding of this doctrine. Derivative jurisdiction simply means that if the state court lacked the authority to order a federal representative's appearance and impose sanctions based on non-appearance, this court likewise lacks that authority; the doctrine does not mean that removal was improper and that this court lacks authority to adjudicate the federal defense asserted as a basis for removal. *See, e.g., Minnesota v. United States*, 305 U.S. 382, 59 S.Ct. 292, 83

L.Ed. 235 (1939) (affirming decision requiring dismissal of condemnation suit against United States removed from state court; because Congress had not granted permission to bring condemnation proceeding against United States in state court, federal court could not rule on merits of petition for condemnation). In any event, Congress overruled the doctrine of derivative jurisdiction by statute for removal actions commenced in state court after June 19, 1986. 28 U.S.C. § 1441(e)[5]; *Morda v. Klein*, 865 F.2d 782, 783 (6th Cir.1989).

### *Conclusion*

The Secretary has asked this court to vacate the state court's decision to grant sanctions and to dismiss the plaintiff's motion for sanctions, because the state court lacked jurisdiction over the Secretary and/or other federal officials and because the sovereign immunity of the federal government precludes the state court's actions. The court concludes that the Secretary is entitled to the relief requested.

IT IS THEREFORE ORDERED that the ruling of the Antrim County Circuit Court imposing sanctions based on the failure of a federal representative to attend a November 16, 2001 settlement conference on behalf of Medicare is hereby VACATED. The remaining non-federal issues raised by this action having already been remanded by this court to the Antrim County Circuit Court, this matter is DISMISSED.

---

**5.** 28 U.S.C. § 1441(e) provides as follows:

   The court to which such civil action is removed is not precluded from hearing and determining any claim in such civil action

because the State court from which such civil action is removed did not have jurisdiction over that claim.